## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JANSSEN PHARMACEUTICA, N.V.,
JANSSEN SCIENCES IRELAND UC,
GILEAD SCIENCES, INC., and GILEAD
SCIENCES IRELAND UC

           Plaintiffs,

    v.

MYLAN PHARMACEUTICALS INC.
and MYLAN INC.

           Defendants.

C.. A. No. 15-760-SLR-SRF

## OPENING BRIEF IN SUPPORT OF MYLAN'S MOTION
## TO DISMISS, STRIKE, OR SEVER PLAINTIFFS' COUNTERCLAIMS
## FILED IN REPLY TO MYLAN'S COUNTERCLAIMS

OF COUNSEL:

James H. Wallace, Jr.
Mark A. Pacella
Wesley E. Weeks
WILEY REIN LLP
1776 K Street N.W.
Washington DC 20006
(202) 719-7000 *telephone*
(202) 719-7049 *facsimile*
jwallaceJr@wileyrein.com
mpacella@wileyrein.com
wweeks@wileyrein.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

James M. Lennon (No. 4570)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jlennon@ycst.com
pkraman@ycst.com

*Attorneys for Defendants Mylan
Pharmaceuticals Inc. and Mylan Inc.*

Date:  April 15, 2016

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ............................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 3

III.    SUMMARY OF THE ARGUMENT ............................................................... 5

IV.     STATEMENT OF FACTS .............................................................................. 7

V.      ARGUMENT ................................................................................................ 11

        A.      Counterclaims-In-Reply Are Not Proper ........................................... 11

        B.      Plaintiffs' Counterclaims-In-Reply Are Unduly Prejudicial ............... 12

        C.      The Counterclaims-In-Reply Are Futile ............................................. 13

                1.      Plaintiffs' Claims Are Not Authorized Under Section 271(e) ........ 14

                2.      Plaintiffs Do Not State a Viable Claim Under Section 271(g) ....... 17

                3.      Plaintiffs' Requested Relief Is Remote and Speculative ................. 18

        D.      If Allowed, the Counterclaims-in-Reply Contain Inflammatory and Irrelevant Matter That Should Be Stricken ................................................. 19

VI.     CONCLUSION............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
    228 F.3d 1338 (Fed. Cir. 2000)................................................................................17

*Allergan, Inc. v. Alcon Laboratories, Inc.*,
    324 F.3d 1322 (Fed. Cir. 2003)................................................................................16

*AstraZeneca Pharmaceuticals LP v. Apotex Corp.*,
    669 F.3d 1370 (Fed. Cir. 2012)................................................................................14

*Averhart v. CWA Local 1033*,
    2015 U.S. Dist. LEXIS 173002 (D.N.J. Dec. 30, 2015)....................................12, 13

*Bayer AG v. Housey Pharmaceuticals, Inc.*,
    340 F.3d 1367 (Fed. Cir. 2003)................................................................................18

*Cornell & Co., Inc. v. Occupational Safety & Health Review Commission*,
    573 F.2d 820 (3d Cir. 1978).....................................................................................12

*Eli Lilly & Co. v. American Cyanamid Co.*,
    82 F.3d 1568 (Fed. Cir. 1996)..................................................................................17

*Eli Lilly & Co. v. Medtronic, Inc.*,
    496 U.S. 661 (1990)...............................................................................................6, 14

*Feed Management Systems, Inc. v. Brill*,
    518 F. Supp. 2d 1094 (D. Minn. 2007)....................................................................11

*Glaxo, Inc. v. Novopharm, Ltd.*,
    110 F.3d 1562(Fed. Cir. 1997).................................................................................19

*Lincoln Savings Bank v. Open Solutions, Inc.*,
    956 F. Supp. 2d 1032 (N.D. Iowa 2013)..................................................................11

*Long v. Wilson*,
    393 F.3d 390 (3d Cir. 2004).....................................................................................12

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
    434 F. Supp. 2d 257 (S.D.N.Y. 2006)......................................................................15

*Momenta Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA Inc.*,
    809 F.3d 610 (Fed. Cir. 2015)..................................................................................18

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.*,
  267 F. Supp. 2d 545 (N.D. W. Va. 2003) ....................................................................6, 16, 17

**FEDERAL STATUTES**

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ...........................................................................................6

35 U.S.C. § 271(e) .................................................................................................... *passim*

35 U.S.C. § 271(g) .................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 7(a) ...................................................................................................5, 10

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 14

Fed. R. Civ. P. 12(f).........................................................................................1, 14, 19

Fed. R. Civ. P. 15(a) ...........................................................................................5, 11, 12, 13

Fed. R. Civ. P. 16(b) ...................................................................................................12

Fed. R. Civ. P. 21 .................................................................................................1, 14

**REGULATIONS**

21 C.F.R. § 314.53(b)(1)..............................................................................................6

**OTHER AUTHORITIES**

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

## I.    INTRODUCTION

Defendants Mylan Pharmaceuticals, Inc. and Mylan Inc. (collectively "Mylan") move pursuant to Fed. R. Civ. P. 12(b)(6), 12(f), and 21 to dismiss, strike, or sever the counterclaims Plaintiffs Janssen Pharmaceutica, N.V., Janssen Sciences Ireland UC, Gilead Sciences, Inc., and Gilead Sciences Ireland UC (collectively, "Plaintiffs") filed *in reply* to Mylan's counterclaims. *See* D.I. 50, pp. 11-37.

Counterclaims to counterclaims are not proper pleadings.  Procedural issues aside, Plaintiffs' counterclaims-in-reply expand the scope of this case by adding two new patents (U.S. Patent Nos. 8,618,291 and 8,101,752) to a case that already has six patents at issue and advance an infringement theory based on processes far removed from Mylan.  The two patents claim processes of making a chemical called PBN-**II**. ███████████████████████

Mylan Pharmaceuticals' Abbreviated New Drug Application ("ANDA") product is a combination of three active pharmaceutical ingredients, including rilpivirine.[1] ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1]     Defendant Mylan Pharmaceuticals Inc. filed the ANDA at issue in this case.  Mylan Inc. did not.  Because the distinction between the two Defendants is not important to the instant motion, this brief refers to Defendants collectively as "Mylan" for ease of reading. Defendants reserve their right to assert that the distinction between the two Defendants is relevant to, *inter alia*, jurisdiction and venue.  *See, e.g.,* D.I. 40 (Defendants' renewed motion to dismiss for lack of personal jurisdiction and improper venue.).

████████   The two new patents Plaintiffs seek to sneak into the case claim a particular process that is one alternative that might be used to make the compound PBN-**II.**

The process of making PBN-II is too far removed from Mylan's ANDA product to be litigated in the context of this case.  Plaintiffs seek a judicial declaration that if Mylan's ANDA is approved, and Mylan then imports its ANDA product, Mylan should be held liable for the manufacturing processes ████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████ [2]  Plaintiffs' request is not authorized by 35 U.S.C. § 271(e), which circumscribes the claims and remedies available in the Hatch-Waxman context.  Plaintiffs also have no plausible claim *against Mylan* under § 271(g),

████████████████████████████████████

Moreover, the two new process patents will greatly expand the scope and difficulty of discovery in this case, threatening to derail the agreed upon schedule for adjudication of the Orange Book listed and other timely asserted patents.  Plaintiffs' actions concerning the two new patents demonstrate their intent to try to impose delay.  As explained below, before even asserting the patents, Plaintiffs demanded an extraordinary amount and level of discovery, ███

█████████████████████████████████████████████████

- ████████████████████████████████████████████████
████████████████████████████████

---

[2]   Plaintiffs' strident insistence, without specific factual support, that it is "highly implausible" that ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████



The discovery Plaintiffs demanded before even asserting the patents depart from the core issues in this case, delving into issues such as ███████████████████████████████ ████████████████████████ Now that Plaintiffs have filed their improper counterclaims, they apparently believe they have license to seek even more harassing discovery into ████████████ █████████████ Consistent with Plaintiffs' intent to expand and delay the case, much of the discovery they demand will likely require use of the Hague Evidence Convention, risking unnecessary delay of the February 12, 2018 trial date.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement lawsuit brought under the Hatch-Waxman Act relating to Mylan's filing of an ANDA to produce a generic version of emtricitabine, rilpivirine, and tenofovir disoproxil fumarate tablets, which Plaintiffs sell under the brand name Complera. Plaintiffs filed suit against Mylan on August 31, 2015, alleging infringement under 35 U.S.C. § 271(e)(2)(A) of three patents (U.S. Patent Nos. 8,841,310, 7,125,879, and 8,101,629) Plaintiffs listed in the Orange Book as relating to Complera.  D.I. 1, ¶ 37.  On January 26, 2016, before Mylan filed its answer, Plaintiffs filed an amended complaint adding declaratory judgment claims for the alleged infringement under 35 U.S.C. § 271(g) of two process patents (U.S. Patent Nos. 7,399,856 and 7,563,922) that purport to cover "processes useful for the preparation of

Complera."  D.I. 33, ¶ 42.   Mylan does not concede subject matter jurisdiction exists to litigate these process patents, but because those infringement allegations at least arguably relate to processes that might be performed by Mylan in the preparation of its ANDA █████ ███████████████████████████████████████, Mylan did not object to that amendment in the interest of judicial economy.  It is also noteworthy that the amended complaint was filed before an agreeable schedule was entered in this action.

On March 3, 2016, Mylan answered Plaintiffs' complaint and counterclaimed under 35 U.S.C. § 271(e)(5) for a declaration of invalidity and non-infringement as to a sixth patent (U.S. Patent No. 8,080,551) that Plaintiffs did not assert against Mylan despite being listed in the Orange Book, but Plaintiffs also refused to covenant not to sue Mylan despite Mylan certifying in its Paragraph IV Letter that its proposed generic product would not infringe any valid and enforceable claims of the '551 patent.  D.I. 44, Counterclaims ¶¶ 20, 78-85.  Plaintiffs answered Mylan's counterclaims on March 22, 2016, submitting counterclaims-in-reply alleging infringement of the '551 patent under 35 U.S.C. § 271(e)(2)(A) and asserting declaratory judgment claims for infringement under § 271(g) of the '291 and '752 patents.

The deadline for amending pleadings is January 20, 2017.  Fact discovery closes January 31, 2017.  Trial is scheduled for February 12, 2018, with a *Markman* hearing scheduled for January 6, 2017.  *See* Feb. 2, 2016 Oral Order, endorsing Proposed Scheduling Order (D.I. 38).

4

### III.    SUMMARY OF THE ARGUMENT

Mylan's motion should be granted for at least the following three reasons:

Under_First_, a counterclaim to a counterclaim is not an authorized pleading.  *See* Fed. R. Civ. P. 7(a)(3) ("Only these pleadings are allowed . . . an answer to a counterclaim.").  This is not one of the rare cases where a plaintiff was allowed to file a compulsory counterclaim in reply to a permissive counterclaim filed by a defendant.  Here, Mylan's counterclaims logically relate to Plaintiffs' original and amended complaints by seeking declarations of invalidity and non-infringement of patents Plaintiffs asserted against Mylan or listed in the Orange Book.

Under_Second_, even if Plaintiffs' counterclaims-in-reply are treated as a request to amend pleadings under Fed. R. Civ. P. 15(a), the Court should reject the claims because ████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Plaintiffs do not dispute that they ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████   *See* Ex. A at 8 (Mar. 11, 2016

Ltr. from Royzman to Pacella); Ex. B (Feb. 14, 2016 Email from Engelhardt to Weeks).

████████████████████████████████   all the while litigating the four patents that were actually listed by Plaintiffs in the Orange Book as relating to Complera and the two process patents Plaintiffs asserted before entry of the stipulated scheduling order will unduly prejudice and burden Mylan.  And because that third-party discovery must likely be obtained through the Hague Convention, it will risk extending the January 31, 2017 fact discovery

██████████████████████████████ The new counterclaims-in-reply are simply too disruptive to be litigated in this case.

Third, the counterclaims are legally futile.  The Hatch-Waxman Act created causes of action for patent infringement where none previously existed.  Those causes of action are codified in 35 U.S.C. § 271(e)(2)(A) and allow the district court to adjudicate infringement allegations pertaining to patents that are authorized to be listed in the FDA's Orange Book based on the filing of an ANDA with a so-called Paragraph IV certification.  The filing a Paragraph IV certification in turn creates a "highly artificial act of infringement" upon which subject matter jurisdiction rests.  *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990).  Plaintiffs' counterclaims-in-reply simply go too far afield from the causes of action authorized by the Hatch-Waxman Act.  They not only relate to patents that are explicitly ineligible for listing in the Orange Book, but they concern processes that do not even directly relate to Mylan's ANDA product. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (limiting Paragraph IV certification to a "patent which claims the listed drug . . . or which claims a use for such listed drug"); 21 C.F.R. § 314.53(b)(1) ("Process patents . . . must not be submitted to the FDA").

Plaintiffs' claims ████████████████████████████████████████ should not be adjudicated in this case.  *See, e.g.*, *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 267 F. Supp. 2d 545, 548-49 (N.D. W. Va. 2003) ("The proposed Amended Complaint only alleges that ████████████████████████████████ ████████████ This activity is excepted from infringement by 35 U.S.C. § 271(e)(1) . . . . Any possible equitable relief ██████████████ is therefore either speculative or barred by the statute.").  And because the relief is too distant and speculative, there is no ripe case or controversy at this time as to the two new process patents.

The attenuated and dubious nature of these two new process patents is further confirmed by Section 271(g)(2) excluding from infringement a product which "is materially changed by subsequent processes."  The product of the process alleged by Plaintiffs to be practiced here,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████  For all these reasons, the counterclaims-in-reply should be stricken as futile, or at minimum, severed from this case for separate adjudication.

## IV.    STATEMENT OF FACTS

If the Court allows Plaintiffs to assert these new patents, this case will involve eight patents: the three Orange Book patents Plaintiffs originally asserted pursuant to 35 U.S.C. § 271(e)(2)(A) (the '310, '879, and '629 patents), the fourth Orange Book patent Mylan asserted in its counterclaims pursuant to Section 271(e)(5) ('551), the two process patents Plaintiffs asserted, before the Rule 16 scheduling conference, in their amended complaint ('856 and '922), and now two additional process patents Plaintiffs now seek to sneak into the case ('752 and '291).

These eight patents collectively involve up to 20 known living inventors, most of whom live in Belgium, France, and the Netherlands, and six patent families, with all but the '879/'551 and '291/'752 patents containing separate disclosures.  *See* D.I. 33-1, 44-1, and 50-1 (the patents).  From the six patents already in this case, Plaintiffs have asserted 75 claims of the four Orange Book patents, an additional 17 claims of the two process patents previously added to the

case, and Plaintiffs are now seeking to assert some unidentified number of additional claims of the two additional non-Orange Book process patents.[3]

The two process patents asserted in Plaintiffs' counterclaims-in-reply, as well as the two process patents previously asserted in Plaintiffs' amended complaint, have been the subject of extensive correspondence between the parties going back to at least November 2015, when Mylan produced its ANDA and Drug Master File ("DMF").   On November 11, 2015, Plaintiffs advised Mylan that ███████████████████████, they intended to amend their complaint to assert the '856 and '922 patents[4] and "request[ed] additional information ██████ ████████████████" to evaluate potential infringement of the '291 and '752 patents.  Ex. C at 1 (Nov. 11, 2015 Email from Royzman to Pacella).

The '291 and '752 patents do not pertain to manufacturing of Mylan's finished ANDA product itself, or even to manufacturing the active ingredients of Mylan's finished ANDA product, but rather pertain to processes Plaintiffs contend cover "the preparation of [the chemical compound PBN-II]."  D.I. 50 at Counterclaims ¶¶ 45, 46.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

█████████████████████.[5]

---

[3]      Plaintiffs assert claims 1-30 of the '310 patent, claims 1-5, 7, and 18-21 of the '629 patent, claims 1-3, 5-8, and 11-18 of the '879 patent, claims 1-8, 10-12, and 14-22 of the '551 patent, claims 1 and 3-12 of the '856 patent, and claims 1-6 of the '922 patent.
[4]      Mylan did not oppose those earlier amendments in the interest of judicial economy.  No scheduling order had been entered, and the proposed patent infringement claims were ostensibly related to Mylan's ANDA product—unlike the infringement claims here, ████████████████

[5]      Plaintiffs' counterclaims-in-reply seem to be based on the misunderstanding that ██████ ████████████████ (see Ex. A at 2), which as explained above, is not correct.

On December 29, 2015, Mylan 

*See* Ex. D (Dec. 29, 2015 Ltr. from Pacella to Royzman) at 1-3.  Barely one day later, on December 30, 2015, Plaintiffs responded that

*See* Ex. E (Dec. 30, 2015 Email from Royzman to Pacella).

On January 26, 2016, Mylan

*See* Ex. F (Jan. 26, 2016 Email from Weeks to Royzman).   Plaintiffs summarily responded on February 14, 2016 by demanding

Ex. G (March 1, 2016 Email from Weeks to Engelhardt).

*See* Ex. A at 6.  Apparently hoping to find a basis to assert the '752 and '291 patents,

*Id*. at 8.  On

March 22, 2016, Plaintiffs answered Mylan's counterclaims by filing counterclaims to the counterclaims asserting the '752 and '291 patents.   D.I. 50.

After filing the counterclaims-in-reply, Plaintiffs have continued to pursue extensive and sweeping discovery relating to the '752 and '291 patents.  On April 13, 2016, Plaintiffs served Requests for Production (Ex. H) containing 25 separate document requests and Requests for Inspection (Ex. I) covering five broad categories.   The inspection requests include ██████

███████████████████████████████████████████████████████████████████████████

██████████████████ RFI No. 4.

Similarly, the document requests include ████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████

## V.      ARGUMENT

### A.      Counterclaims-In-Reply Are Not Proper

Fed. R. Civ. P. 7(a) describes the "only" pleadings that "are allowed."  As relevant here, the only permitted response to a counterclaim is "an answer to a counterclaim."  Fed. R. Civ. P. 7(a)(3).  On this basis alone, Plaintiffs' counterclaims-in-reply should be stricken.

This case is not the rare case where counterclaims-in-reply have been allowed as "a compulsory reply to a permissive counterclaim."  *Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007).  Mylan's counterclaim against the '551 patent was a compulsory counterclaim, as it bears a "logical relationship" to Plaintiffs' original infringement claims. *Lincoln Sav. Bank v. Open Solutions, Inc.*, 956 F. Supp. 2d 1032, 1039 (N.D. Iowa 2013). Specifically, Mylan's counterclaim on the '551 patent sought declarations of invalidity and non-infringement of an Orange Book patent for which Mylan submitted to FDA a Paragraph IV certification, but which Plaintiffs declined to covenant not to sue Mylan.  Similarly, Mylan's counterclaims to the two process patents asserted by Plaintiffs in their amended complaint relate directly to the same patents that were asserted against Mylan. [6]

Mylan's asserted counterclaims do not raise new operative facts (as, for example, antitrust or unfair competition counterclaims would have done), thus Plaintiffs were not forced to make or waive compulsory claims arising from those new facts.   If Plaintiffs wished to assert additional process patents, they should have done so in their original complaint, or properly moved to amend pleadings, rather than trying to do an end-run around the Federal Rules of Civil Procedure to backdoor new, unrelated, non-Orange Book listed patents into this case now.

---

[6]      Although Plaintiffs' count asserting the '551 patent is an improper pleading that should be dismissed, Mylan does not oppose granting Plaintiffs leave to amend their complaint to assert the '551 patent in view of Mylan's declaratory judgment claims and because that patent is listed in the Orange Book.

### B.     Plaintiffs' Counterclaims-In-Reply Are Unduly Prejudicial

Even if analyzed as a motion to amend pleadings, the Court should deny, with prejudice, Plaintiffs leave to amend pleadings to add the '291 and '752 patents.  Although Rule 15(a)(2) provides that the "court should freely give leave [to amend pleadings] when justice so requires," amendments are not allowed when they prejudice the non-moving party by substantially increasing discovery burdens and delaying the case.[7]  *See, e.g.*, *Averhart v. CWA Local 1033*, 2015 U.S. Dist. LEXIS 173002 (D.N.J. Dec. 30, 2015) (denying request to amend pleadings for undue prejudice).

When evaluating amendments under Rule 15(a)(2), the Third Circuit states that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978).  The non-moving party (here, Mylan) may establish prejudice by showing that allowing the amended pleading "would: (i) require [the non-moving party] to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent [a party] from bringing a timely action in another jurisdiction."  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[7]     Because the January 2017 deadline for amending pleadings has not passed, Plaintiffs' amendment is subject to Fed. R. Civ. P. 15(a)(2), rather than the "good cause" standards of Fed. R. Civ. P. 16(b)(4).



Plaintiffs should not be allowed to expand, complicate, and delay this Hatch-Waxman

case by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This case should be about the Orange Book-listed patents that

must be litigated under the Hatch-Waxman Act for Mylan to launch its ANDA product (and the

other patents Mylan consented to inclusion in this case in the interest of judicial economy).

Plaintiffs may oppose quick adjudication of these patents and may wish to impose additional

hurdles on Mylan beyond the claims authorized by the Hatch-Waxman Act.  Mylan, however,

should not be forced to incur the time, expense, and delay of litigating additional patents asserted

based on off-the-wall theories while also pursuing non-infringement and invalidity defenses to

the other patents already in the case.

### C.    The Counterclaims-In-Reply Are Futile

Plaintiffs' counterclaims should also be rejected because they are futile.  *See, e.g.*,

*Averhart*, 2015 U.S. Dist. LEXIS 173002 (rejecting amendments under Rule 15(a)(2) as futile

for failing to state a legally viable claim).  The counterclaims allege that Mylan will import into

the United States a product made by a patented process because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[8] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

Mylan then intends to make and sell its finished ANDA products, which can only happen if its

ANDA is approved and Mylan prevails against Plaintiffs on either invalidity or non-infringement

of the Orange Book patents already at issue in this case (or the stay is otherwise lifted).

Plaintiffs' counterclaims thus ████████████████████████████████

████████ pertain to actions Mylan may undertake at some point more than two years into the

future.  Plaintiffs' allegations here are too attenuated and too remote to be adjudicated.  There is

also no good-faith basis for Plaintiffs to assert that PBN-II is not "materially changed by

subsequent processes," (*see* 35 U.S.C. § 271(g)(1)), before the product that may someday be

imported into the United States is made.

As explained below, the counterclaims-in-reply suffer from at least three legal

deficiencies that warrant either dismissing or striking them under Rule 12(b)(6) or 12(f), or at

minimum, severing them under Rule 21 for resolution in a separate action at a later date.  *See*

Fed. R. Civ. P. 12(b)(6) (allowing dismissal of claims for "failure to state a claim upon which

relief can be granted"); Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an

insufficient defense"); Fed. R. Civ. P. 21 ("The court may also sever any claim against a party.").

1. Plaintiffs' Claims Are Not Authorized Under Section 271(e)

As this Court is well aware, 35 U.S.C. § 271(e)(2)(A) creates a cause of action for

submitting an ANDA with a Paragraph IV certification.  The U.S. Supreme Court described this

as "a highly artificial act of infringement," as this statute gives rise to a cause of action for patent

infringement where none otherwise exists.   *Lilly*, 496 U.S. at 678; *see also AstraZeneca Pharms.*

14

*LP v. Apotex Corp.*, 669 F.3d 1370, 1377 (Fed. Cir. 2012) ("§ 271(e)(2) provided a new cause of action so that courts could promptly resolve infringement and validity disputes before the ANDA applicant had engaged in the traditional statutorily defined acts of infringement.").

Because the Hatch-Waxman Act specially created a cause of action, the statute narrowly defines the relief that may be granted.  Section 271(e)(4)(B) provides that for "an act of infringement *described in paragraph (2)* . . . injunctive relief may be granted against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug."  The statute does not authorize granting relief for acts of infringement outside the context of submitting a Paragraph IV certification (*i.e.,* "an act of infringement described in paragraph (2)").  Indeed, Section 271(e)(4) states that "remedies prescribed . . . [in § 271(e)(4)] are the *only remedies* which may be granted by a court for an act of infringement described in paragraph (2)."  Thus, the claims that may be litigated under the Hatch-Waxman framework are statutorily circumscribed, with other traditional statutorily defined acts of infringement better reserved for later adjudication.  Accordingly, none of the process patents are properly asserted in this case under the Hatch-Waxman Act.

Although parties may occasionally agree to litigate process patents alongside Orange Book patents where those process patents bear some reasonable relationship to the proposed ANDA product that gives rise to a case in the Hatch-Waxman framework, there is no question that process patents may not be listed in the Orange Book and fall outside this carefully crafted regime for expediting resolution of disputes regarding ANDA products.  *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 434 F. Supp. 2d 257, 264 (S.D.N.Y. 2006) ("The Orange Book came into existence as a result of the Hatch-Waxman Act, which was enacted by Congress to balance the competing policy interests of inducing pioneering research and development of

15

new drugs and enabling competitors to bring low-cost generic copies of those drugs to market . . . . The Orange Book provides a streamlined mechanism for identifying patent issues related to proposed generic products and facilitating judicial resolution of the question whether the generic drug would infringe a pertinent patent.").  Plaintiffs should not be allowed upset this carefully crafted balance by bringing two process patents into the case through the backdoor and at least the two newly asserted process patents should be severed from this case now.

No case stands on all fours given the unusual nature of Plaintiffs' claims, but the Federal Circuit addressed a somewhat analogous situation in *Allergan, Inc. v. Alcon Laboratories, Inc.*, 324 F.3d 1322, 1332 (Fed. Cir. 2003).  In that case, the court rejected the plaintiff's attempt to litigate claims under Section 271(b) for induced infringement based on potential future uses of the proposed generic drug and affirmed the district court finding that "section 271(e)(2) only makes the filing of an ANDA an act of infringement when the patent at issue claims the use for which FDA approval is sought" and does not authorize other claims that may ripen in the future. *Id.*  This Court should extend similar reasoning to Plaintiffs' attempt to expand this case by asserting claims under Section 271(g) that are based on potential future activity ████████ ████████████████████████████████████████████████████████████████ ████████████████████████

The Northern District of West Virginia also relied on Section 271(e)(4) when a plaintiff attempted to amend its pleadings to bring induced infringement claims under Section 271(b) ████████████████████████████████████████████████████ finding that such claims are not ripe and not within the narrow relief allowed under the Hatch-Waxman Act. After analyzing the limited relief authorized by Section 271(e)(4), the court found that the amended pleading was not statutorily authorized at the present time:

> There are two problems with [Plaintiff's] request [to amend pleadings]. First, bulk levofloxacin is not the drug for which Mylan's ANDA seeks approval. . . . Second, Plaintiffs seek to enjoin Quimica and Betachem from doing something they are not accused of doing—making commercial sales of bulk levofloxacin. The proposed Amended Complaint only alleges that Quimica and Betachem provided Mylan with raw materials for its ANDA preparations. This activity is excepted from infringement by 35 U.S.C. § 271(e)(1). Moreover, 35 U.S.C. § 271(e)(3) prevents the Court from crafting a narrower injunction to prevent such activity. Any possible equitable relief against Quimica and Betachem is therefore either speculative or barred by the statute.

*Ortho-McNeil*, 267 F. Supp. 2d at 548-49.  This Court should similarly decline to allow Plaintiffs

to litigate, *in this case*, claims outside the context of 271(e) 

### 2.   Plaintiffs Do Not State a Viable Claim Under Section 271(g)

The counterclaims-in-reply do not state proper claims under Section 271(g).  Section

271(g) is a narrow provision of the Patent Act that only exists to close a "loophole" that existed

before 1988 where "the holder of a United States process patent had no recourse against one who

practiced the process abroad and imported the product."  *Ajinomoto Co., Inc. v. Archer-Daniels-*

*Midland Co.*, 228 F.3d 1338, 1347 (Fed. Cir. 2000).   Section 271(g) provides that "[w]hoever

without authority imports into the United States or offers to sell, sells, or uses within the United

States a product which is made by a process patented in the United States shall be liable as an

infringer."  *See* 35 U.S.C. § 271(g).  Section 271(g) thus gives rise to a claim if activity that

would be an act of infringement if performed in the United States is also an act of infringement if

performed abroad when making products imported into the United States.  *See Eli Lilly & Co. v.*

*Am. Cyanamid Co.*, 82 F.3d 1568, 1571 (Fed. Cir. 1996).

Here, there would be no claim of infringement against Mylan even if PBN-II was made in
the United States. 

The Federal Circuit reconfirmed this
narrowness of Section 271(g) last year, finding that "it is more consonant with the language of
the statute, as well as with this court's precedent, to limit § 271(g) to the actual 'ma[king]' of a
product." *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 615 (Fed. Cir.
2015); *cf. Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003)

The narrowness of Section 271(g) is further confirmed by the fact that the statute
provides that "[a] product which is made by a patented process will, for purposes of this title, not
be considered to be so made after — (1) it is materially changed by subsequent processes; or (2)
it becomes a trivial and nonessential component of another product."   The product of the process
alleged by Plaintiffs to be practiced here, PBN-II, is "materially changed"

before it is materially changed again to emtricitabine,
rilpivirine, and tenofovir disoproxil fumarate tablets, the ANDA product that may someday be
imported into the United States.  Plaintiffs make no specific factual allegations to support a
finding that PBN-II is not materially changed before production and importation of Mylan's
ANDA product.  For this additional reason, Plaintiffs have not stated viable claims.

      3.      <u>Plaintiffs' Requested Relief Is Remote and Speculative</u>

The declaratory relief Plaintiffs request is too remote and speculative to give rise to a
justiciable case or controversy at this time.   Even if Plaintiffs' allegations are taken at face value

that ████████████████████████████ in accordance with processes claimed by the '291 and '752 patents, any ████████████████ made by alleged infringing processes will happen at some time in the future.  At minimum, Mylan must still obtain FDA approval of its ANDA, obtain verdicts of non-infringement or invalidity of the Orange Book patents, and lift the 30-month stay of final FDA approval.  If all that happens, Plaintiffs must still prove infringement of the '291 and '752 patents and establish they are entitled to injunctive relief rather than simple monetary damages to obtain the injunctive relief they seek.  To date, Mylan has not yet obtained tentative FDA approval of its ANDA.  Trial is scheduled for February 2018.  And the 30-month stay expires in November 2018.  Now is simply not the time to entertain additional claims for declaratory relief, particularly claims for infringement based on ████████████████████ ██████████████ that are attenuated from the ANDA product at issue in this case. [9]

### D.   If Allowed, the Counterclaims-in-Reply Contain Inflammatory and Irrelevant Matter That Should Be Stricken

If Plaintiffs are allowed to present the counterclaims-in-reply, certain paragraphs should be stricken for making inflammatory, irrelevant, and prejudicial statements.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").  Plaintiffs' pleadings are filled with statements that simply have no bearing on the matter at issue and are only meant to impugn Mylan.

For example, the counterclaims reference an unrelated litigation between Mylan and Janssen in the District of New Jersey, involving a different product and different patents from those in this case, to gratuitously assert Mylan has a "practice of using Janssen's commercial-

---

[9]      And because any such alleged infringement is still years away, this case is plainly distinguishable from cases where courts have allowed parallel proceedings for declaratory relief to proceed along with Hatch-Waxman litigation.  *Cf. Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1571(Fed. Cir. 1997) ("the threat of Novopharm entering the U.S. market was not 'years away'").

scale manufacturing processes" rather than "developing and using its own methods."  D.I. 50,

Counterclaims ¶¶ 61-63.   These assertions are made under the heading "Mylan's Pattern of

Using Janssen's Patented Processes," which confirms that they are made for an improper

purpose.  *Id.* at p. 21. Plaintiffs also devote 25 paragraphs to describing a dispute between the

parties concerning extensive discovery Plaintiffs demanded even before filing a lawsuit asserting

the patents in question.  *Id*. at ¶¶ 64-88.  Plaintiffs' allegations are incorrect, are only meant to

embarrass and impugn Mylan and its suppliers, are irrelevant to the issues in the case, and for all

these reasons they should not be allowed.

## VI.    CONCLUSION

For the reasons above, the counterclaims-in-reply should be stricken, dismissed, and/or

severed from this case.


Dated:  April 15, 2016

OF COUNSEL:

James H. Wallace, Jr.
Mark A. Pacella
Wesley E. Weeks
WILEY REIN LLP
1776 K Street N.W.
Washington DC 20006
(202) 719-7000 *telephone*
(202) 719-7049 *facsimile*
jwallaceJr@wileyrein.com
mpacella@wileyrein.com
wweeks@wileyrein.com

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


/s/ *James M. Lennon*
James M. Lennon (No. 4570)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jlennon@ycst.com
pkraman@ycst.com

*Attorneys for Defendants Mylan*
*Pharmaceuticals Inc. and Mylan Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, James M. Lennon, hereby certify that on April 25, 2016, I caused to be electronically

filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will

send notification that such filing is available for viewing and downloading to the following

counsel of record:

> Steven J. Balick, Esquire
> Tiffany Geyer Lydon, Esquire
> Andrew C. Mayo, Esquire
> Ashby & Geddes, PA
> 500 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899
> *sbalick@ashby-geddes.com*
> *tlydon@ashby-geddes.com*
> *amayo@ashby-geddes.com*
>
> *Attorneys for Janssen Pharmaceutica, N.V. and*
> *Janssen Sciences Ireland UC*
>
> Brian E. Farnan, Esquire
> Michael J. Farnan, Esquire
> Farnan LLP
> 919 North Market Street, 12th Floor
> Wilmington, DE 19801
> *bfarnan@farnanlaw.com*
> *mfarnan@farnanlaw.com*
>
> *Attorneys for Gilead Sciences, Inc. and*
> *Gilead Sciences Ireland UC*

I further certify that on April 25, 2016, I caused a copy of the foregoing

document to be served by e-mail on the above-listed counsel and on the following:

Gregory L. Diskant, Esquire
Irena Royzman, Esquire
Ryan M. Mott, Esquire
Lachlan Campbell-Verduyn, Esquire
Jordan M. Engelhardt, Esquire
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036
*gldiskant@pbwt.com*
*iroyzman@pbwt.com*
*rmott@pbwt.com*
*lcampbellverduyn@pbwt.com*
*jengelhardt@pbwt.com*

*Attorneys for Janssen Pharmaceutica, N.V. and
Janssen Sciences Ireland UC*

Colleen Tracy James, Esquire
Manuel J. Velez, Esquire
Scott A. McMurry, Esquire
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
*CTracyJames@mayerbrown.com*
*MVelez@mayerbrown.com*
*SMcMurry@mayerbrown.com*

*Attorneys for Gilead Sciences, Inc. and
Gilead Sciences Ireland UC*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

 */s/ James M. Lennon*
James M. Lennon (No. 4570)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
*jlennon@ycst.com*

*Attorneys for Defendants*