## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JANSSEN PHARMACEUTICA, N.V., JANSSEN SCIENCES IRELAND UC, GILEAD SCIENCES, INC., and GILEAD SCIENCES IRELAND UC<br><br>Plaintiffs,<br><br>v.<br><br>MYLAN PHARMACEUTICALS, INC. and MYLAN, INC.<br><br>Defendants. | C. A. No. 15-760-SLR-SRF<br><br>**REDACTED - PUBLIC VERSION** |

### REPLY BRIEF IN SUPPORT OF MYLAN'S MOTION
### TO DISMISS, STRIKE, OR SEVER PLAINTIFFS' COUNTERCLAIMS
### FILED IN REPLY TO MYLAN'S COUNTERCLAIMS

OF COUNSEL:

James H. Wallace, Jr.
Mark A. Pacella
Brian H. Pandya
Wesley E. Weeks
WILEY REIN LLP
1776 K Street N.W.
Washington DC 20006
(202) 719-7000 *telephone*
(202) 719-7049 *facsimile*
jwallace@wileyrein.com
mpacella@wileyrein.com
bpandya@wileyrein.com
wweeks@wileyrein.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

James M. Lennon (No. 4570)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jlennon@ycst.com
pkraman@ycst.com

*Attorneys for Defendants Mylan
Pharmaceuticals Inc. and Mylan Inc.*

Date:  May 26, 2016

**Redacted Version: June 2, 2016**

01:18743412.1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFFS SHOULD BE PROHIBITED FROM ASSERTING UNRELATED PROCESS PATENT CLAIMS .................................................................................... 2

    A. The Counterclaims-in-Reply Are Futile ................................................................ 2

    B. Mylan Is Indeed Prejudiced By Defending ▮▮▮▮▮▮▮▮▮▮ ............... 4

III. PLAINTIFFS' COUNTERCLAIMS-IN-REPLY ARE PROCEDURALLY IMPROPER .................................................................................................................. 7

IV. SEVERANCE PRESENTS THE SIMPLEST OPTION ............................................... 9

V. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Allergan, Inc. v. Alcon Laboratories, Inc.*,
  324 F.3d 1322 (Fed. Cir. 2003) ................................................................................................3

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
  228 F.3d 1338 (Fed. Cir. 2000) ................................................................................................3

*Cradle IP LLC v. Texas Instruments, Inc.*,
  No. 11-1254-SLR, 2013 WL 1794992 (D. Del. Apr. 29, 2013) (Robinson, J.) .......................6

*Cureton v. National Collegiate Athletic Association*,
  252 F.3d 267 (3d Cir. 2001) .....................................................................................................5

*Gonzalez v. St. Margaret's House Housing Development Fund Corp.*,
  613 F. Supp. 60 (S.D.N.Y. 1985) .............................................................................................6

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
  No. 02-272-MPT, 2006 U.S. Dist. LEXIS 72724 (D. Del. Oct. 5, 2006) ................................6

*Magsil Corp. v. Seagate Technology*,
  No. 08-940, 2010 WL 2710472 (D. Del. July 7, 2010) ...........................................................7

*In re Merrill Lynch & Co. Research Reports Seurity Litigation*,
  214 F.R.D. 152 (S.D.N.Y. 2003) .........................................................................................9, 10

*Momenta Pharmaceuticals., Inc. v. Teva Pharmaceuticals USA Inc.*,
  809 F.3d 610 (Fed. Cir. 2015) ...............................................................................................3, 4

*Novartis Pharmaceuticals Corp. v. Eon Labs Manufacturing, Inc.*,
  206 F.R.D. 392 (D. Del. 2002) .................................................................................................6

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.*,
  267 F. Supp. 2d 545 (N.D. W. Va. 2003) .................................................................................3

**FEDERAL STATUTES**

35 U.S.C. § 271(b) ..........................................................................................................................3

35 U.S.C. § 271(e) ..................................................................................................................2, 3, 9

35 U.S.C. § 271(g) .................................................................................................................. *passim*

**RULES**

Fed. R. Civ. P. 7 ................................................................................................................................8

Fed. R. Civ. P. 15(a) ....................................................................................................................2, 7

Fed. R. Civ. P. 21 ............................................................................................................................9

I.  **INTRODUCTION**

Plaintiffs' opposition (D.I. 69) ("Opp.") to Mylan's motion to dismiss, strike, or sever Plaintiffs' counterclaims-in-reply does not deny that: (a) Plaintiffs' counterclaims concern the



Plaintiffs' counterclaims-in-reply ("counterclaims") are far too attenuated to litigate here. This is a Hatch-Waxman Act case. Under the governing statutes, the proper focus is on Mylan and Mylan's ANDA product. Moreover, the counterclaims are so legally deficient that the Court should dismiss or strike them. Not surprisingly, Plaintiffs' opposition cites no legal authority for their novel proposition that the narrow remedies authorized by 35 U.S.C. § 271(g) permit a patentee to hold a defendant liable for ▮. That is because it does not make sense. Plaintiffs' opposition also fails to explain why their claims—

---

[1] "Plaintiffs" collectively refers to Janssen Pharmaceutica, N.V., Janssen Sciences Ireland UC, Gilead Sciences, Inc., and Gilead Sciences Ireland UC. In this brief, "Mylan" collectively refers to defendants Mylan Pharmaceuticals Inc. ("MPI"), the ANDA filer in this case, and Mylan Inc. ▮

which should properly be asserted against ███████, if at all—should be allowed to be litigated in this case in view of § 271(e)(4) defining the only claims allowed in Hatch-Waxman cases. Plaintiffs were surely aware of the thin legal support they had to assert these counterclaims, hence their filing of counterclaims-in-reply rather than properly moving to amend pleadings to allow the parties and the Court the opportunity to evaluate the impact of these new patents on the case. The Court should reject Plaintiffs' attempted end-run and dismiss or strike the counterclaims—or at a minimum, sever the counterclaims for separate, later adjudication.

## II.  PLAINTIFFS SHOULD BE PROHIBITED FROM ASSERTING UNRELATED PROCESS PATENT CLAIMS

The Court should dismiss Plaintiffs' counterclaims-in-reply under either the futility or prejudice standards of Fed. R. Civ. P. 15(a)(2).

### A.  The Counterclaims-in-Reply Are Futile

The Court should dismiss Plaintiffs' counterclaims as legally futile. Plaintiffs' opposition brief debates only points that are not in dispute, for example, whether process patents can *ever* be litigated in the context of an ANDA case. Opp. 14-16. That is not the issue here. Indeed, Mylan already agreed that Plaintiffs' potentially *relevant* process patents could be added to this case. D.I. 32 (stipulation to amend pleadings). The issue here is whether Plaintiffs' counterclaims, ███████████████████████████████████████████████████████████████ ███████████████████████████████ are properly litigated in the context of this Hatch-Waxman case. They are not and should be dismissed for any one of three separate and independent reasons.

First, Plaintiffs fail to address § 271(e)(4)'s limitation on the types of claims that can be asserted in a case filed pursuant to the Hatch-Waxman Act. While Plaintiffs suggest the provision should not apply because they intend to rely on § 271(g), (Opp. 14), courts have often

used § 271(e)(4) to dismiss claims that go beyond those authorized by the Hatch-Waxman Act, even when those other claims were based on other portions of the Patent Act. For example, the Federal Circuit in *Allergan, Inc. v. Alcon Laboratories, Inc.* rejected a plaintiff's attempt to bring declaratory judgment claims for induced infringement under § 271(b). *See* 324 F.3d 1322, 1332 (Fed. Cir. 2003). The district court in *Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.* also rejected infringement claims ▮▮▮▮▮▮▮▮▮▮ as premature and unauthorized by the Hatch-Waxman Act. *See* 267 F. Supp. 2d 545, 548-49 (N.D. W. Va. 2003).

Second, Plaintiffs fail to justify why ▮▮▮▮▮▮▮▮▮▮ Plaintiffs do not dispute that ▮▮▮▮▮▮▮▮▮▮ even if ▮▮▮▮▮▮▮▮▮▮ Plaintiffs identify no legal authority to support their claim that ▮▮▮▮▮▮▮▮▮▮.

Plaintiffs' infringement claims are also inconsistent with the narrow purposes of § 271(g), which is intended only to close a "loophole" that existed before 1988 where "the holder of a United States process patent had no recourse against one who practiced the process abroad and imported the product." *See Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1347 (Fed. Cir. 2000). Mylan is not "one who practiced the process abroad and imported the product." *Id.* § 271(g) does not and cannot give rise to a cause of action where none otherwise exists. *See Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 615 (Fed. Cir. 2015).[2]

---

[2] Plaintiffs' argument that the issue of whether ▮▮▮▮▮▮▮▮▮▮ raises a factual issue is misguided. Opp. 18. Plaintiffs allege *no specific facts* in their counterclaims to plausibly suggest that ▮▮▮▮▮▮▮▮▮▮. Plaintiffs do not even posit a theory to contest the obvious (and judicially noticeable) fact that ▮▮▮▮▮▮▮▮▮▮

01:18743412.1

3

It also makes no difference that "[t]wo process patents, the '856 and '922 patents, are already being litigated under Section 271(g) along with Orange Book Patents." Opp. 15. Those two patents concern the manufacture of rilpivirine, a compound claimed by the Orange Book patents. That is not the case with the '291 and '752 patents ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[3] The cases Plaintiffs cite, (see Opp. 15-16), do not implicate ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ There is no support for Plaintiffs' attempted stretch here.

Third, Plaintiffs dismiss Mylan's declaratory judgment standing argument as "half-hearted," (Opp. 17), but fail to explain why the relief they seek is not remote and speculative. Even if Mylan were to launch its product (the possibility which is still years away), there would still be no viable claim against Mylan concerning the two new process patents.

### B.     Mylan Is Indeed Prejudiced By Defending the Actions of Third Parties

Plaintiffs argue that Mylan is not prejudiced by the counterclaims because (a) "Mylan has ample time to work up its defenses," (Opp. 11), (b) has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," (id. at 12), and (c) "incremental discovery does not amount to prejudice." Id. Besides each of these statements being incorrect, nowhere in ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Section 271(g) covers the importation of a product, the imported product here is Mylan's ANDA product▓ ▓▓▓▓▓▓ See *Momenta*, 809 F.3d at 615.

---

[3] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Plaintiffs thus argue an unduly narrow interpretation of what constitutes "materially changed" under § 271(g). These questions of statutory interpretation are legal issues.

Plaintiffs' opposition do they address the fundamental issue that Plaintiffs are seeking to impute third parties' potential liability onto Mylan through their counterclaims. That is prejudicial.

First, Plaintiffs' argument that Mylan "has ample time to work up *its* defenses" misses the point. Opp. 11. The counterclaims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mylan should not be forced to litigate those issues, which are a distraction from the Orange Book patents and the composition of Mylan's ANDA product that should be the central focus of a Hatch-Waxman Act litigation.[4] Having to additionally "work up . . . defenses" for claims that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, rather than the ANDA product itself, is an additional burden that unfairly prejudices Mylan. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) ("The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted. Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.").

Second, Plaintiffs are wrong that Mylan has the ability to obtain all of the documents Plaintiffs seek from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs' requested discovery is burdensome, overbroad, harassing, and disproportional to the needs of the case, by seeking to uncover every aspect of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To be sure, in an effort to dissuade Plaintiffs from asserting these patents, Mylan was able to procure some information on

---

[4] The litigation schedule in this case, as in any ANDA case, is built around the calculated 30-month stay of FDA approval of the ANDA pending the litigation. Notably, only Orange Book-listed patent assertions invoke the 30-month stay, and process patents are ineligible for Orange Book listing. *See* Mylan's Opening Brief (D.I. 58), 15-16 (discussing the exclusion of process patents from the Hatch-Waxman framework).

01:18743412.1

5

███████████████[5] That limited production does not, however, mean Mylan is able to satisfy the full scope of discovery Plaintiffs request. *See Inline Connection Corp. v. AOL Time Warner, Inc.*, No. 02-272-MPT, 2006 U.S. Dist. LEXIS 72724, at *4-5 (D. Del. Oct. 5, 2006) (distinguishing "the 'practical ability' to obtain documents" test prevalent in other circuits and clarifying that "practical ability" is not the same as "legal control," the law in the Third Circuit).

███████████████████████████, Plaintiffs' counterclaims are prejudicial. *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 613 F. Supp. 60, 62 (S.D.N.Y. 1985) (denying leave to amend where the addition of a claim "will broaden tremendously the evidentiary issues and the need for extensive third-party discovery.").

Third, although Plaintiffs note that they are only asserting three claims from the two new patents, and try to characterize their requested discovery as "incremental," the additional requested discovery is ███████████████, it is substantial in its own right and includes the following sweeping categories:

---

[5] Curiously, Plaintiffs cite this production to argue Mylan can obtain documentation on ███████████████████████████

01:18743412.1



There is nothing "incremental" about the additional discovery Plaintiffs seek. This is instead discovery for a whole other case. ████████████████████ is the type of prejudice that warrants excluding Plaintiffs' counterclaims. *Magsil Corp. v. Seagate Tech.*, No. 08-940, 2010 WL 2710472, at *2 (D. Del. July 7, 2010) ("As our Court of Appeals recognized in *Cureton,* a motion for leave to amend under Rule 15(a) may be denied when, as here, allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.").

### III. PLAINTIFFS' COUNTERCLAIMS-IN-REPLY ARE PROCEDURALLY IMPROPER

Plaintiffs' argument that the counterclaims-in-reply are compulsory counterclaims is disingenuous. Plaintiffs assert that the counterclaims-in-reply "arise out of the same transaction or occurrence that is the subject of Mylan's counterclaims—Mylan's filing of the ANDA and

preparations to sell its ANDA Products in the United States." Opp. 6. If that were true, the claims must relate to Mylan's ANDA filing. ████████████████████████████████

████████████ However, even if it did, the counterclaims-in-reply should have been asserted as part of Plaintiffs' original complaint or by properly moving to amend pleadings. Plaintiffs' decision to try to backdoor two new patents into the case by filing counterclaims-in-reply confirms the claims' procedural impropriety.

Plaintiffs' argument that "Rule 7 expressly allows 'an answer to a counterclaim'" is similarly misguided. Opp. 7. The fact that an answer to a counterclaim is allowed does not mean that counterclaims to counterclaims are also allowed as a matter of course. Mylan's counterclaims seek declaratory judgments of invalidity and non-infringement of the patents already in the case—counterclaims routinely filed by defendants in nearly every patent infringement case—and of one additional Orange Book patent that was identified in Mylan's Paragraph IV letter but not originally asserted by Plaintiffs. These counterclaims did not raise new issues that invited counterclaims on non-Orange Book patents. In fact, the counterclaims did not contain any new subject matter that warranted counterclaims-in-reply concerning process patents. If Plaintiffs wished to assert the '291 and '792 patents, they should have done so in their original complaint or properly moved to amend pleadings.[6]

---

[6] Plaintiffs' explanation for the inflammatory and prejudicial statements included in their counterclaims-in-reply confirms those statements have no relevance to this case and should be stricken if the counterclaims-in-reply are allowed. Plaintiffs make no showing that the past litigations between Mylan and Janssen involving different patents and different products are in any way related to this case. Similarly, the discovery disputes referenced in these counterclaims-in-reply relate ████████████, as explained above, and thus cannot "provid[e] a key part of the factual basis for Plaintiffs' infringement claims" against Mylan. *See* Opp. 20.

01:18743412.1

### IV. SEVERANCE PRESENTS THE SIMPLEST OPTION

The host of legal and procedural issues raised by Plaintiffs' counterclaims can be avoided by severing those claims under Rule 21 for later adjudication. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms . . . sever any claim against a party."). Severance is appropriate here, and Mylan does provide "good reason" to sever. Opp. 19. Notably, although the '291 and '792 patents share some inventors with some other patents already in the case, the two new patents have entirely different specifications and claims, which are not closely related to any of the other patents in the case. In addition to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, the two new patents will require additional expert witnesses given Plaintiffs ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ When considered against this record, all five factors that are commonly weighed when evaluating severance of claims are met here.[7]

First, the counterclaims concern ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇ thus arise from different transactions and occurrences than the originally asserted claims.

Second, as Plaintiffs note, their counterclaims allegedly arise "under 35 U.S.C. § 271(g)" while the proper claims in this case are authorized by the Hatch-Waxman Act and arise "under a different provision, Section 271(e)." Opp. 14. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[7] *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003) (identifying "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims" as factors to consider when evaluating severance).

01:18743412.1

9

██████████████████████████████████████████████████████ Thus, the counterclaims-in-reply implicate different questions of fact and law.

Third, judicial economy weighs in favor of severance. If Plaintiffs prevail against Mylan on the already asserted Orange Book patents, Mylan will not be permitted to launch its ANDA product until the Orange Book patents expire, making Plaintiffs' claims for alleged infringement of process patents premature. On the other hand, if the Court determines in the severed action that these process patents cannot be asserted against Mylan, this litigation would be spared the inefficiency and disruption of having these legally baseless claims included in this action.

Fourth, Plaintiffs do not identify any prejudice from severance in their opposition brief. To the contrary, the counterclaims impose substantial discovery burdens and prejudice Mylan by ████████████████████████████████████████ while also defending infringement allegations against its own ANDA product based on the patents already in the case.

Fifth, ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████

Mylan respectfully requests the Court at least exercise its "great discretion to restructure [the] action to promote the efficient administration of justice" and "jettison [the counterclaims-in-reply]" because they "are not conveniently prosecuted together" with the existing claims in the case. *Merrill Lynch*, 214 F.R.D. at 155 (quoting Moore's Federal Practice—Civil §§ 21.02[4], 21.05 (2002)) (internal quotations omitted).

## V. CONCLUSION

For the reasons above, the counterclaims-in-reply should be stricken, dismissed, and/or severed from this case.

Dated:  May 26, 2016

OF COUNSEL:

James H. Wallace, Jr.
Mark A. Pacella
Brian H. Pandya
Wesley E. Weeks
WILEY REIN LLP
1776 K Street N.W.
Washington DC 20006
(202) 719-7000 *telephone*
(202) 719-7049 *facsimile*
jwallace@wileyrein.com
mpacella@wileyrein.com
bpandya@wileyrein.com
wweeks@wileyrein.com

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


/s/ *James M. Lennon*
James M. Lennon (No. 4570)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jlennon@ycst.com
msquire@ycst.com

*Attorneys for Defendants Mylan Pharmaceuticals Inc. and Mylan Inc.*

# **CERTIFICATE OF SERVICE**

I, James M. Lennon, hereby certify that on June 2, 2016, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> Tiffany Geyer Lydon, Esquire
> Andrew C. Mayo, Esquire
> Ashby & Geddes, PA
> 500 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899
> *sbalick@ashby-geddes.com*
> *tlydon@ashby-geddes.com*
> *amayo@ashby-geddes.com*
>
> *Attorneys for Janssen Pharmaceutica, N.V. and Janssen Sciences Ireland UC*
>
> Brian E. Farnan, Esquire
> Michael J. Farnan, Esquire
> Farnan LLP
> 919 North Market Street, 12th Floor
> Wilmington, DE 19801
> *bfarnan@farnanlaw.com*
> *mfarnan@farnanlaw.com*
>
> *Attorneys for Gilead Sciences, Inc. and Gilead Sciences Ireland UC*

I further certify that on June 2, 2016, a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following:

01:17649291.1

Gregory L. Diskant, Esquire
Irena Royzman, Esquire
Ryan M. Mott, Esquire
Lachlan Campbell-Verduyn, Esquire
Jordan M. Engelhardt, Esquire
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
*gldiskant@pbwt.com*
*iroyzman@pbwt.com*
*rmott@pbwt.com*
*lcampbellverduyn@pbwt.com*
*jengelhardt@pbwt.com*

*Attorneys for Janssen Pharmaceutica, N.V. and Janssen Sciences Ireland UC*

Colleen Tracy James, Esquire
Manuel J. Velez, Esquire
Scott A. McMurry, Esquire
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
*CTracyJames@mayerbrown.com*
*MVelez@mayerbrown.com*
*SMcMurry@mayerbrown.com*

*Attorneys for Gilead Sciences, Inc. and Gilead Sciences Ireland UC*

    YOUNG CONAWAY STARGATT
      & TAYLOR, LLP

     */s/ James M. Lennon*
    James M. Lennon (No. 4570)
    Pilar G. Kraman (No. 5199)
    Rodney Square
    1000 N. King Street
    Wilmington, DE 19801
    (302) 571-6600
    *jlennon@ycst.com*
    *pkraman@ycst.com*

    *Attorneys for Defendants*